```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                      SOUTHERN DIVISION


UNITED STATES OF AMERICA

VS.                              CRIMINAL NO. 1:22CR58-LG-BWR-1

PATRICK DARNELL DANIELS, JR.
```

**TRANSCRIPT OF MOTION HEARING AND PRETRIAL CONFERENCE**

```
                 BEFORE THE HONORABLE LOUIS GUIROLA
                    UNITED STATES DISTRICT JUDGE

                          JULY 6, 2022
                      GULFPORT, MISSISSIPPI

APPEARANCES:

FOR THE GOVERNMENT:
  JONATHAN BUCKNER, ESQUIRE
  U.S. ATTORNEY'S OFFICE
  1575 20TH AVENUE
  GULFPORT, MISSISSIPPI  39501

FOR THE DEFENDANT:
  JOHN WEBER, ESQUIRE
  FEDERAL PUBLIC DEFENDER'S OFFICE
  2510 14TH STREET, SUITE 902
  GULFPORT, MISSISSIPPI  39501




REPORTED BY:   TERI B. NORTON, RMR, FCRR, RDR
               2012 15TH STREET, SUITE 403
               GULFPORT, MISSISSIPPI  39501
               (228)563-1780
```

1     **THE COURT:**  Madam clerk, will you please call the
2 first case.
3     **THE CLERK:**  The United States District Court for the
4 Southern District of Mississippi, Southern Division, Criminal
5 Case No. 1:22cr58, United States of America versus Patrick
6 Darnell Daniels, Jr. set for a motion hearing.
7     **THE COURT:**  What says the government?
8     **MR. BUCKNER:**  Jonathan Buckner on behalf of the
9 government, Your Honor.  And at counsel's table, I also have
10 with me Ray Bell, the case agent, and the government is ready
11 to proceed.
12     **THE COURT:**  Good afternoon, gentlemen.  What says the
13 defendant?
14     **MR. WEBER:**  Ready, Your Honor.  Good afternoon.  John
15 Weber on behalf of Mr. Daniels.
16     **THE COURT:**  Mr. Weber, good day to you as well.
17    The matter is scheduled for a motion hearing, but we are
18 also going to incorporate the pretrial conference as well.
19 That, of course, assumes the Court's ruling on the pending
20 motion to dismiss the indictment.
21    All right.  Mr. Weber, I have read the defendant's motion,
22 as well as the memorandum brief in support of a motion to
23 dismiss the indictment.  Are you ready to proceed on your
24 motion?
25     **MR. WEBER:**  Yes, Your Honor.  We also filed late

1    yesterday a reply and response to the government's.

2         **THE COURT:**  I have all of those documents.  I have
3    read them.  I'm going to give you an opportunity to argue it,
4    since this is a question that hinges on the constitutionality
5    of the statute.  I'm going to give you an opportunity to make
6    some argument, and I will give Mr. Buckner an opportunity to
7    make some argument before the Court rules on it.

8         **MR. WEBER:**  Yes, Your Honor.

9         **THE COURT:**  Mr. Buckner, I also have your materials.
10   Are you ready to proceed as well?

11        **MR. BUCKNER:**  Yes, Your Honor.

12        **THE COURT:**  Apparently, since the very recent Supreme
13   Court decision in *New York State Rifle & Pistol Association*
14   *versus Bruen*, there may be some question -- at least that is
15   the question that arises from the defendant in this case as to
16   whether or not Section 922(g) of Title 18 of the United States
17   Code, that is, (g)(3), whether or not that statute meets
18   constitutional muster.  I will give each side ten minutes
19   within which to argue the motion.  Mr. Weber, you can reserve
20   part of your argument in rebuttal if you wish to do so.  You
21   may proceed.

22        **MR. WEBER:**  Yes, Your Honor.

23      Your Honor, we did file this motion to dismiss pursuant to
24   the most recent Supreme Court case of *Bruen*.  In *Bruen*, what
25   the Supreme Court did was say, look, since a case called

1    *Heller*, the Courts of Appeals has used this two-step analysis.
2    One was whether or not a regulation, specifically a gun
3    regulation, impinges on an individual's Second Amendment right
4    to possess or bear arms.  And if it does, the second part of
5    that analysis is to apply what's considered an intermediate
6    scrutiny of that particular law in that it's narrowly tailored
7    to achieve a compelling governmental interest.
8         What the Supreme Court did recently in *Bruen*, they said,
9    that's not the standard to apply.  What the courts are to do is
10   when the plain text of the Second Amendment covers an
11   individual's conduct, the Constitution presumptively protects
12   that conduct.  The Second Amendment presumptively protects an
13   individual's right to bear arrangements, that is, an
14   individual's right to self-defense and personal protection.
15   When that occurs, according to *Bruen*, the government must
16   demonstrate that the regulation is consistent with the national
17   historical tradition of firearm regulation.  Only if a firearm
18   regulation is consistent with this nation's historical
19   tradition may a Court conclude that the individual's conduct
20   falls outside the Second Amendment's unqualified command.  The
21   government must affirmatively prove that its firearm regulation
22   in part of the historical tradition that delimits the outer
23   bounds of the right to keep and bear firearms.  And what *Bruen*
24   did was abrogate a Fifth Circuit precedent, that's *National*
25   *Rifle Association of America, Incorporated versus the Bureau of*

1    *Alcohol, Tobacco, Firearms & Explosives.*

2         Very quickly, that case was about someone under the age of
3    21's right to possess and bear arms.  And in that case, the
4    Fifth Circuit did use the intermediate scrutiny analysis.

5         In this case, in looking at the government's response, the
6    government has not provided this Court a basis for the law
7    rooted in history.  They haven't done that.  The government has
8    not put forth any evidence or any argument that this particular
9    law is rooted in the nation's historical tradition of firearms
10   regulation.

11        That's our point.  This is not a question, Your Honor, of
12   whether or not this gun law is a good idea.  When we start
13   talking about whether or not this gun law is a good idea, we
14   start moving into this intermediate scrutiny analysis, again,
15   whether or not it is narrowly tailored to achieve a compelling
16   governmental interest.

17        And finally, Your Honor, I know my time is limited, but
18   the government may bring up a phrase used in *Bruen*, quote,
19   law-abiding citizen.  Well, I point out to the Court that in
20   Justice Alito and Justice Cavanaugh's concurring opinion, they
21   said, look, this opinion does not address, quote, the
22   categories of people who may lawfully possess a firearm.  This
23   case is about applying the correct scrutiny -- or this
24   argument, this motion, is about applying the correct analysis
25   of this particular law and whether or not it -- whether or not

1    the impingement on the individual's Second Amendment right is
2    rooted in our nation's history.
3             **THE COURT:**  Thank you, Mr. Weber.  I will hear from
4    the government, Mr. Buckner.
5             **MR. BUCKNER:**  Thank you, Your Honor.
6        Before I begin, I have provided a copy of this to counsel
7    opposite.  The government has prepared a one-page bullet point
8    document with some case law and some bullet points concerning
9    that that the government would like to submit at this time, if
10   the Court would receive it.
11            **THE COURT:**  You can give it to my law clerk.
12            **MR. BUCKNER:**  Thank you, Your Honor.
13       May I proceed, Your Honor?
14            **THE COURT:**  Yes, please.
15            **MR. BUCKNER:**  May it please the Court, the first
16   issue the Court has to determine before reaching whether or not
17   the nation's tradition of gun regulation is analogous to the
18   922(g)(3) prohibition of a firearm -- possession of a firearm
19   by an unlawful user of a controlled substance is to determine
20   whether or not that Second Amendment right would apply to
21   someone who is not a law-abiding or responsible citizen.
22       In *Bruen*, the majority opinion referenced the Second
23   Amendment protecting law-abiding or responsible citizens'
24   rights to possess firearms 11 times.  In fact, the Court
25   prefaced much of its ruling on the fact that Cook and Nash were

1     two ordinary law-abiding adult citizens, thus part of the
2     people referenced by the Second Amendment.
3          So the Second Amendment doesn't protect all people's right
4     to possess firearms.  In fact, from *Heller, McDonald* through
5     *Bruen*, the Supreme Court has been clear, it protects
6     law-abiding citizens' rights to possess firearms.  The Court
7     explicitly stated in *Bruen* that today's decision holds the
8     state may not enforce the law like New York Sullivan law that
9     effectively prevents its law-abiding citizens from carrying a
10    gun for this purpose.  That is all we decide.  Our holding
11    decides nothing about who may lawfully possess a firearm or the
12    requirements that must be met to buy a gun.
13         So when you look at *Bruen* and you look at the fact that
14    the Second Amendment only protects law-abiding citizens' rights
15    to possess firearms, it is clear this challenge to a 922(g)(3)
16    charge must be dismissed.  The 922(g)(3) charge at issue here
17    charges the defendant with being an unlawful user of a
18    controlled substance.  The Court has got to take that fact as
19    true at this point in time.  That means he is not a law-abiding
20    citizen.  And the Court need not reach whether regulating the
21    possession of firearms by people like the defendant in this
22    case is consistent with this nation's tradition.
23         Because *Bruen* didn't decide who may lawfully possess a
24    firearm, the Fifth Circuit's prior decisions referenced in the
25    government's response and in the one-page document just

1    provided are binding precedent on this Court.  And those cases
2    all conclude that a 922(g)(3) charge passes constitutional
3    muster.
4         Now, assuming the Court disagrees and determines that
5    there does need to be some historical basis for regulating the
6    possession of a firearm by an unlawful user of a controlled
7    substance, the motion to dismiss still fails.  What the Supreme
8    Court said in *Bruen* is that the Court needs to look to
9    historical analogues.  And what type of analogue is required?
10   Well, *Bruen*, again, gives guidance.  They say, to be clear,
11   even if a modern day regulation is not a dead ringer for a
12   historical precursor, it still must be analogous enough to pass
13   constitutional muster.  For example, Courts can use analogies
14   to long-standing laws forbidding carrying of firearms in
15   sensitive places, such as schools and government buildings, to
16   determine whether modern regulations are constitutionally
17   permissible.
18        Well, with that in mind for what an analogue is, there is
19   clear historical precedent for the regulation of firearms based
20   on the risk that the possessor of that firearm imposes.  In
21   *Bruen* itself, there is some discussion of that.  In *Bruen*, the
22   Court references general V.E. Sickles 1866 decree that promoted
23   the right of well-disposed inhabitants to bear arms, but it
24   excluded, expressly excluded disorderly persons, vagrants or
25   disturbers of the peace.  So that's a historical tradition of

1    prohibiting people from possessing firearms based on the risk
2    that they pose.
3        In *State versus Shelby*, found at 90 MO 302, it's an 1886
4    case from Missouri, the Court there upheld a law prohibiting
5    intoxicated persons from carrying firearms.
6        So initially, the Court doesn't need to get to the history
7    of it because the defendant in this case is not a law-abiding
8    citizen.  Taking the indictment that he is an unlawful user of
9    a controlled substance, the Court need not reach that issue.
10   But if it does, within *Bruen*, within *Heller*, within *McDonald*,
11   it is clear that this nation has a tradition of prohibiting
12   people who pose risk to the community at large from possessing
13   firearms, and the analogy between someone who is mentally
14   impaired and a felon and someone who is an unlawful user of a
15   controlled substance is sufficient to deny the motion to
16   dismiss, Your Honor.
17        **THE COURT:**  Thank you, Mr. Buckner.  Mr. Weber, do
18   you wish to reply?
19        **MR. WEBER:**  No, Your Honor.
20        **THE COURT:**  Very well.  Thank you, gentlemen.
21       All right.  Again, the Court has reviewed the motion, as
22   well as the memorandum that have been provided by counsel for
23   the defendant, counsel for the government, and the reply brief
24   as well.  In the opinion of the Court, there are sufficient
25   case authority to conclude that the motion to dismiss should be

1  denied.  I find that the statute that is Section 922(g)(3) of
2  Title 18 of the United States Code does pass constitutional
3  muster under the recent *Bruen* decision from the Supreme Court,
4  as well as other precedent within not only the Fifth Circuit
5  but in other circuits as well.  I will rule on that from the
6  bench.  The motion is denied.  However, in view of the fact
7  that this is, to my knowledge, the first challenge to Section
8  922(g)(3) of Title 18 of the United States Code, based upon a
9  constitutional analysis under *Bruen*, I will follow that up with
10 a written order.
11        Anything else on behalf of the government insofar as this
12 motion is concerned?
13         **MR. BUCKNER:**  No, Your Honor.
14         **THE COURT:**  Mr. Weber, anything else on behalf of the
15 defendant?
16         **MR. WEBER:**  No, Your Honor.
17         **THE COURT:**  Very well.  I will proceed now to the
18 pretrial conference aspect of our hearing this afternoon.  Are
19 there any other motions that are pending on behalf of the
20 government?
21         **MR. BUCKNER:**  No, Your Honor.
22         **THE COURT:**  Any other motions pending, Mr. Weber, on
23 behalf of the defendant?
24         **MR. WEBER:**  No, Your Honor.
25         **THE COURT:**  All right.  I think I was previously

1  advised that this case would take two or three days to try.
2  Mr. Buckner, is that still accurate?
3            **MR. BUCKNER:**  Your Honor, I believe three days would
4  be accurate.  It shouldn't be more than three days.
5            **THE COURT:**  Is that your understanding as well, Mr.
6  Weber?
7            **MR. WEBER:**  Yes, Your Honor.
8            **THE COURT:**  I will schedule this matter for jury
9  selection and trial on July 25th, and I believe that falls on a
10 Monday, Monday, July 25th, at 9:00 a.m.  Let me point out to
11 all the parties that the jury selection process will consist of
12 the blind strike method.  You are all familiar with that, Mr.
13 Buckner, Mr. Weber.  Both of you have chosen juries in the past
14 based on the blind strike method.
15      In addition to that, I'm going to ask that all
16 nondispositive motions -- I believe all the dates have run, if
17 I'm not mistaken, for motions, as well as plea negotiations, so
18 what I'm going to ask for then, let's see, I'm going to ask for
19 jury instructions, witness lists, and exhibit lists.  Those
20 will be due no later than July the 18th.  That's July 18th for
21 witness lists, exhibit lists, and jury instructions.  Trial on
22 July 25th.
23      All right.  Mr. Buckner, I presume that you have tendered
24 some plea offers to the defendant.  Is that accurate?
25           **MR. BUCKNER:**  Your Honor --

1               **THE COURT:** You don't have to tell me what they are.
2    I just want to be sure you have done it.
3               **MR. BUCKNER:** I am not aware as to whether or not a
4    formal offer has been made.  Ms. Rose was assigned the case
5    prior to me.  I believe -- I'm not sure, Your Honor.
6               **THE COURT:** Okay.  There's no dishonor in saying you
7    don't know.
8               **MR. BUCKNER:** Yes, Your Honor.
9               **THE COURT:** Mr. Weber, let me ask you.  Have you been
10   provided with any plea offers on behalf of the government?
11              **MR. WEBER:** No, Your Honor.  I think some of the
12   Assistant U.S. Attorney's practices, they don't offer a plea
13   unless the defense asks for one.
14              **MR. BUCKNER:** Your Honor, may I speak with counsel
15   opposite briefly?
16              **THE COURT:** Sure.
17              **MR. BUCKNER:** Your Honor, I have been able to find --
18   there was an offer, I believe, made in mid-June.
19              **THE COURT:** I'm sorry.  I didn't understand what you
20   said.
21              **MR. BUCKNER:** There was a plea offer made in
22   mid-June, Your Honor.
23              **THE COURT:** Is that correct, Mr. Weber?
24              **MR. WEBER:** Yes, Your Honor.
25              **THE COURT:** I'm not simply idly curious.  I want to

1  be sure the defendant has been provided -- if an offer was
2  made, it was provided to the defendant, he reviewed it and
3  considered it and rejected it.  Is that correct?
4         **MR. WEBER:**  Yes, Your Honor.
5         **THE COURT:**  That's all I needed to know.
6      All right, then.  Anything else on behalf of the
7  government before we close this hearing?
8         **MR. BUCKNER:**  No, Your Honor, nothing on behalf of
9  the government.
10        **THE COURT:**  Mr. Weber, anything else on behalf of
11 your client, Mr. Daniels, before we close the hearing today?
12        **MR. WEBER:**  No, Your Honor.
13        **THE COURT:**  Very well.  Then I will see everyone on
14 the 25th of July for jury selection and trial.  That will be
15 Mr. Daniels' next scheduled court appearance.  If there is
16 nothing else, you may be excused.
17     The defendant is remanded back to the U.S. Marshals
18 pending trial.  I don't think we have anything else this
19 afternoon, so we are adjourned.
20                     (HEARING CONCLUDED)
21
22
23
24
25

```
 1
 2
 3                    CERTIFICATE OF COURT REPORTER
 4
 5        I, Teri B. Norton, RMR, FCRR, RDR, Official Court
 6   Reporter for the United States District Court for the Southern
 7   District of Mississippi, appointed pursuant to the provisions
 8   of Title 28, United States Code, Section 753, do hereby certify
 9   that the foregoing is a correct transcript of the proceedings
10   reported by me using the stenotype reporting method in
11   conjunction with computer-aided transcription, and that same is
12   a true and correct transcript to the best of my ability and
13   understanding.
14        I further certify that the transcript fees and format
15   comply with those prescribed by the Court and the Judicial
16   Conference of the United States.
17
18
19
20        s/ Teri B. Norton
          TERI B. NORTON, RMR, FCRR, RDR
21        OFFICIAL COURT REPORTER
22
23
24
25
```