IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


UNITED STATES OF AMERICA

VS.                              CRIMINAL NO. 1:22CR58-LG-BWR-1

PATRICK DARNELL DANIELS, JR.




**TRANSCRIPT OF SENTENCING HEARING**



BEFORE THE HONORABLE LOUIS GUIROLA
UNITED STATES DISTRICT JUDGE

OCTOBER 18, 2022
GULFPORT, MISSISSIPPI

APPEARANCES:

FOR THE GOVERNMENT:
  JONATHAN BUCKNER, ESQUIRE
  **ERICA ROSE, ESQUIRE**
  U.S. ATTORNEY'S OFFICE
  1575 20TH AVENUE
  GULFPORT, MISSISSIPPI  39501

FOR THE DEFENDANT:
  JOHN WEBER, ESQUIRE
  FEDERAL PUBLIC DEFENDER'S OFFICE
  2510 14TH STREET, SUITE 902
  GULFPORT, MISSISSIPPI  39501



REPORTED BY:  TERI B. NORTON, RMR, FCRR, RDR
              2012 15TH STREET, SUITE 403
              GULFPORT, MISSISSIPPI  39501
              (228)563-1780

1      **THE COURT:**  Madam clerk, you may call the next case.

2      **THE CLERK:**  Criminal Case No. 1:22cr58, United States

3  of America versus Patrick Darnell Daniels, Jr., set for

4  sentencing.

5      **THE COURT:**  What says the government?

6      **MS. ROSE:**  Good afternoon.  Thank you, Your Honor.

7  Erica Rose and Jonathan Buckner, on behalf of the government,

8  and we are ready to proceed.

9      **THE COURT:**  And I see that you have Mr. Buckner with

10  you as well.  Again, good afternoon to you both.

11      **MR. BUCKNER:**  Afternoon, Your Honor.

12      **THE COURT:**  And what says the defendant?

13      **MR. WEBER:**  Good afternoon, Your Honor.  John Weber

14  on behalf of Patrick Daniels, along with Leilani Tynes.

15  Mr. Daniels is present in court and ready for sentencing.

16      **THE COURT:**  All right.  Thank you, Mr. Weber.  Good

17  afternoon to you and Ms. Tynes as well.

18      **MS. TYNES:**  Good afternoon, Your Honor.

19      **THE COURT:**  Ms. Rose and Mr. Buckner, did you receive

20  a copy of the presentence investigation report and the addendum

21  to the report?

22      **MS. ROSE:**  Yes, Your Honor.

23      **THE COURT:**  Does the government have any objections?

24      **MS. ROSE:**  No, Your Honor.

25      **THE COURT:**  Mr. Weber and Ms. Tynes, did you also

1   receive a copy of the presentence investigation report and the

2   addendum?

3              **MR. WEBER:**  Yes, Your Honor.

4              **THE COURT:**  Did you have an opportunity to go over it

5   with Mr. Daniels?

6              **MR. WEBER:**  Yes, Your Honor.

7              **THE COURT:**  In your judgment, did Mr. Daniels

8   understand the findings of fact and the application of the

9   advisory guidelines as contained in the report?

10             **MR. WEBER:**  Yes, Your Honor.

11             **THE COURT:**  Does Mr. Daniels have any objections

12  either to the findings of fact or the application of the

13  guidelines as contained in the report?

14             **MR. WEBER:**  No, Your Honor.

15             **THE COURT:**  Very well.  Then without objection, the

16  Court will adopt the presentence investigation report without

17  change.  The Court notes that by applying the facts contained

18  in the presentence investigation report to the advisory federal

19  sentencing guidelines, that the total offense level in this

20  case is a level 20, with a criminal history category of II.

21  This yields a sentencing imprisonment range of 37 to 46 months,

22  a supervised release range of 1 to 3 years, a fine range of

23  15,000 to $150,000, and the Court has before it no additional

24  evidence or materials which would justify a departure under the

25  provisions of the advisory guidelines.

1      Mr. Weber, do you and Ms. Tynes intend to offer any

2  additional evidence or any additional materials which may touch

3  upon the statutory sentencing factors?

4           **MR. WEBER:**  Your Honor, we have submitted for the

5  Court's consideration a sentencing memorandum and a request for

6  the Court to consider a downward variance, along with three

7  letters that were attached to that memorandum.

8           **THE COURT:**  The sentencing memorandum itself has been

9  filed of record.  You say those letters were attached as well?

10          **MR. WEBER:**  Yes, Your Honor.

11          **THE COURT:**  Ordinarily we try to split those up, but

12  we will make a note in the record that the letters were

13  actually attached to the sentencing memorandum which I have

14  reviewed, as well as those letters.

15          **MR. WEBER:**  Your Honor, those documents were

16  submitted to the Court via electronic mail, along -- and copied

17  to the U.S. Attorney's Office, so the Court can split them up.

18          **THE COURT:**  Yes, I don't need to.  Like I said,

19  ordinarily they are split up, but since they are together, that

20  is fine.  They are all in the record.

21          **MR. WEBER:**  Yes, Your Honor.

22          **THE COURT:**  Thank you.  Does the government intend to

23  offer any additional materials or any additional evidence which

24  may touch upon the statutory sentencing factors?

25          **MS. ROSE:**  No, Your Honor.

1          **THE COURT:**  Very well.  Pursuant to Rule 32 of the

2     Federal Rules of Criminal Procedure, Mr. Weber, I will invite

3     you to make any additional comments or any additional arguments

4     that you wish to make.  You may wish to defer to Ms. Tynes.  I

5     don't know.  But either one of you have that opportunity now.

6          **MR. WEBER:**  Thank you, Your Honor.  Your Honor, I

7     would just briefly highlight a couple of points I made in the

8     sentencing memorandum.

9          Number one, I don't think at any point that Patrick

10    Daniels denied the facts that the government used to seek a

11    conviction before the jury.  This case was more about

12    constitutional rights, about an individual who has never been

13    convicted of a felony offense and who is now a convicted felon

14    and will suffer the consequences of being a convicted felon.

15         Those were, I think, the motivating factors to test the

16    government's case.  And I would submit to the Court that it's

17    healthy from time to time to try a case.  And the Court -- I

18    feel that our trials are few and far between, and I know that

19    the Court has said before that you won't take that against a

20    defendant, the fact that he decided to go to trial.  I know

21    that the Court will not hold that against Patrick Daniels.

22         You know, this might have been a good case to try to

23    negotiate on the front end for some type of diversion, but the

24    U.S. Attorney's Office leadership has a policy against

25    diversion.  I think Patrick Daniels would have been successful

1    under a diversion type program, and that's why we have

2    submitted to the Court to -- and asking the Court to strongly

3    consider a sentence of probation for a number of reasons.

4        First -- and I will go back a second.  The guidelines in

5    this case are driven by the characteristics of one of the

6    firearms in the car.  It was a rifle with an extended magazine,

7    which resulted in an offense level of 20.  Because Mr. Daniels

8    went to trial, he was not given a reduction for acceptance of

9    responsibility.  His criminal history is minimum.  It is

10   calculated primarily based on the underlying offense in this

11   case, which is possession of marijuana.

12       Mr. Daniels, however, does have a strong support network.

13   His mother, his uncle, his godmother are present in court

14   today.  Mr. Daniels understands the difference between right

15   and wrong, and his focus is now on his child and his younger

16   siblings.

17       I believe he has the tools and the mentality to be

18   successful if given a sentence of probation, perhaps a sentence

19   of probation with a special condition of halfway house or

20   electronic monitoring.

21       Probation is not a lenient sentence.  It is punishment.

22   And if a Court uses a sentence of probation, what that does is

23   it subjects an individual on probation to certain rules and

24   regulations.  However, if that individual does not abide by his

25   obligation to the Court or her obligation to the Court, he or

 1    she finds himself or herself before the Court for resentencing.

 2    So I think it could be an effective tool in certain cases,

 3    given the characteristics of certain defendants.  And I believe

 4    that Patrick Daniels is one of those certain defendants where

 5    perhaps this particular type of sentence could be effective in

 6    making sure that there is no recidivism, that he does what is

 7    expected of him, that is, to support his family and be a good

 8    citizen in our community.

 9        I also, in my memorandum, make a distinction between this

10    particular case where there's no allegation or no evidence

11    presented that Patrick Daniels used those firearms or even

12    fired those firearms, if you will.

13        And distinguish this case from those cases that we've seen

14    perhaps in Your Honor's court of individuals charged with being

15    unlawful users of controlled substance with a history of being

16    a menace to their community, if you will, and individuals who

17    perhaps are posing on social media with guns and marijuana and

18    posting videos on social media, terrorizing their communities.

19    And that is not the case before Your Honor this afternoon.  And

20    I believe that's an important distinction between those cases

21    where you may have sentenced individuals for this particular

22    crime that distinguishes this case to where it may justify the

23    sentence requested by the defendant.

24        That's all, Your Honor.

25            **THE COURT:**  You make good points, Mr. Weber,

1    certainly, as you always do, and I appreciate your sentencing

2    memorandum as well.  I would also commend the Public Defender's

3    office for the concept that sometimes cases should go to trial

4    and should test these statutes that have been passed by

5    Congress and have the opportunity for other courts to take a

6    closer look at them.  I thank you.

7             **MR. WEBER:**  Yes, Your Honor.

8             **THE COURT:**  All right.  Ms. Rose, you have the same,

9    or Mr. Buckner, either one of you have the same opportunity

10    pursuant to Rule 32.  Is there anything that you wish to add?

11             **MS. ROSE:**  No, Your Honor.  Thank you.

12             **THE COURT:**  Of course, Mr. Daniels, before the Court

13    imposes any type of a sentence, you have the right to speak

14    yourself.  You have the right of what we call allocution.  And

15    again, that means you have the opportunity and the right to

16    stand up and say anything that you wish to say for as long as

17    you wish to say it in mitigation of the sentence.  Is there

18    anything that you wish to say?

19             **THE DEFENDANT:**  Yes, Your Honor, I have something

20    ready.

21             **MR. WEBER:**  Would you like us to come to the lectern,

22    Your Honor?

23             **THE COURT:**  Whatever would be more comfortable.  You

24    can do it from counsel table, if you'd like, or the lectern.

25             **THE DEFENDANT:**  Can I go ahead?

1          **THE COURT:**  Yes, sir.

2          **THE DEFENDANT:**  I would like to start by saying I

3     apologize for my actions on April 25, 2022.  My intentions were

4     not directed toward disobeying the law.  I accept full

5     responsibility for my actions.  Sitting in federal custody has

6     given me plenty of time to think about my actions.  Marijuana

7     has been a troublemaker for me in the previous years of my

8     life, and now it has cost me my freedom.  I have lost

9     everything I've worked hard for over the years.  I've lost

10    family, friends, relationship, all due to the fact I smoke

11    marijuana.

12          Moving toward, I plan on being drug-free and a

13    hard-working person so the next step in my life will be to

14    focus on becoming a business owner and also -- and also opening

15    my own tire shop.  Although construction has always been my

16    choice of trade, I have a passion for changing and selling

17    tires.

18          Looking forward, I will not let this one situation stop me

19    from doing the things I want to accomplish.  Being taken away

20    from my children has really been an eye-opener.  Nothing left

21    on this planet is more important than them.  My step-kids and

22    my own child's life are more important than mine.  I plan on

23    marrying my beautiful girlfriend and giving the kids and

24    ourselves a better life in the near future.  I sit here every

25    day thinking of the things that I've done wrong.  Not once have

1   I given up on myself.  My family depends on me, so giving up

2   will never be the answer.  My life has taken a turn, but it

3   isn't too late to fix my mistakes.

4        Upon release, I am going to take care of all legal matters

5   that are pending against me.  I plan on never being in jail

6   again in my life, seeing the impact that this journey has given

7   me, not only me, but also my family and friends.  Your Honor,

8   I'm working hard every day and planning my new life for the day

9   I am released.

10        Once again, I apologize for my inconvenience, putting

11   myself in a position to fail.  I can promise you there will be

12   no more issues with me and the law.  I plan on being a

13   law-abiding citizen from here on out.

14        I would like to ask for a chance to rejoin my family as

15   soon as possible.  I prepared myself to move forward and not

16   let my felony conviction affect the rest of my life.  I will

17   continue working hard to provide for my family.  Thank you for

18   your time and fairness in my case.

19        My legal team has provided me with everything that I've

20   needed upon me -- and they've never given up on me.  Sorry.

21   They continue to fight for me each and every step of the way.

22   Thank you, Your Honor.

23           **THE COURT:**  Thank you, Mr. Daniels.

24        All right.  I appreciate the comments that you've made,

25   Mr. Weber, as well as Mr. Daniels' allocution here.  Of course,

1      a sentence of probation would constitute a variance from the

2      advisory guideline range, and I don't have -- quite frankly, I

3      don't see before me any justification for a variance.  But by

4      the same token, this circumstance that Mr. Daniels finds

5      himself in involves some serious firearms, not only a

6      9-millimeter pistol but an assault rifle as well, with

7      high-capacity managers, the maximum penalty for which is ten

8      years in prison.  However, the guideline range here is well

9      taken, and as you've stated before, no defendant should ever be

10     penalized for having gone to trial, and I will be guided by the

11     advisory guidelines.

12          It is the considered judgment of the Court, after

13     considering the advisory guideline computations, as well as the

14     other sentencing factors under Section 3553(a) of Title 18 of

15     the United States Code, and it is the judgment of the Court

16     that the defendant is hereby committed to the custody of the

17     Federal Bureau of Prisons for a term of 46 months as to the

18     single count in the indictment.

19          Mr. Daniels, that's the highest end of the advisory

20     guideline range, and I'm a believer that the sentencing

21     guidelines are well calculated and well conceived.  There are

22     many persons who are prohibited for one reason or another from

23     possessing any firearm.  You've noted in your allocution that

24     marijuana has been a problem for you, but it's marijuana in

25     combination with firearms that has been your downfall here.

1    The formula is not a difficult one to remember.  If you want to

2    use drugs, even marijuana, you should not and cannot possess a

3    firearm.  For that matter, if you want to possess a firearm,

4    then you just need to stay away from and do not use drugs, even

5    marijuana.  That is the law.

6        It is the further order of the Court that the defendant is

7    to pay a fine in the amount of $2,000, which is due

8    immediately.  This fine is a downward departure from the

9    advisory guideline range and is based on the defendant's

10   ability to pay.

11       Payment of the fine shall begin while the defendant is

12   incarcerated.  Upon release, any unpaid balance shall be paid

13   at a rate of $100 per month, with the first payment due 30 days

14   after release from imprisonment.

15       The Court finds that the defendant does not have the

16   ability to pay any interest on this fine.  Therefore, the

17   interest requirement is waived.  In the event that the criminal

18   monetary penalties are not paid in full prior to termination of

19   his supervised release, the defendant is ordered to enter into

20   a written agreement with the financial litigation program of

21   the United States Attorney's Office for payment of any

22   remaining balances.

23       Additionally, the value of any future discovered assets

24   may be applied to offset the balance of the criminal monetary

25   penalty.  The defendant may be included in the Treasury Offset

Program allowing qualified federal benefits to be applied to offset the balance of the criminal monetary penalty.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 3 years as to the single count of the indictment.

Within 72 hours of release from custody from the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which he is released.

While on supervised release, the defendant shall comply with the mandatory conditions under Section 3583(d) of Title 18 of the United States Code.  The Court finds that the standard conditions of supervision which are listed in part G of the presentence investigation report and on the judgment order, and which have been adopted by the Court and have not been objected to by this defendant, are reasonably related to the factors set forth in Title 18 of the United States Code, Section 3553(a)(1), (a)(2)(A), (B), (C), and (D).  The Court finds that these conditions involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in that section.

In the Court's view, these conditions are consistent with the policy statements issued by the United States Sentencing Commission pursuant to their authority under Section 994(a) of Title 28 of the United States Code.  Therefore, the defendant shall comply with the standard conditions of supervision on the

1    judgment order, which, of course, includes the prohibition of

2    the possession of a firearm.

3           In addition, the following conditions are imposed.  And

4    these, of course, are special conditions.  Number one, the

5    defendant shall participate in a program of testing and

6    out-patient treatment and in-patient treatment, if approved by

7    the Court during the term of supervised release for drug abuse

8    as directed by the probation office.

9           When enrolled in a drug treatment program, either

10   in-patient or out-patient, the defendant shall abstain from

11   consuming alcoholic beverages during treatment and for the

12   remaining period of supervised release.  The defendant shall

13   contribute to the cost of treatment in accordance with the

14   probation office co-payment policy.

15          Number two, the defendant shall not possess, ingest or

16   otherwise use any synthetic narcotic or synthetic cannabinoid

17   unless it is prescribed by a licensed medical practitioner and

18   for a legitimate medical purpose.

19          Number three, in the event that the defendant resides in

20   or visits any jurisdiction where marijuana or marijuana

21   products have been approved, legalized or decriminalized, the

22   defendant shall not possess, ingest or otherwise use marijuana

23   or any marijuana products unless prescribed by a licensed

24   medical practitioner and for a legitimate medical purpose.

25          The Court notes that special conditions number 1, 2 and 3

1    are imposed due to this defendant's history of illicit

2    substance abuse, which is documented in the presentence

3    investigation report.  It is intended to provide the probation

4    office with the necessary tools to assist the defendant in

5    maintaining sobriety and will also assist in his reintegration

6    after release from incarceration.

7        Number 4, the defendant shall provide the probation office

8    with access to any requested financial information.

9        Number 5, the defendant shall not incur new credit charges

10   or open additional lines of credit without the approval of the

11   probation office and unless the defendant is in compliance with

12   the installment payment schedule.

13       Special conditions number 4 and 5 are imposed due to the

14   fine which the Court has ordered, and it is intended to enable

15   the probation office with the tools necessary to monitor this

16   defendant's payments and to ensure compliance with the

17   installment payment schedule ordered by the Court.

18       Number 6, the defendant shall submit his person, property,

19   house, residence, vehicle, papers, or electronic communication

20   devices or office to a search conducted by a United States

21   probation officer.  Failure to submit to search may be grounds

22   for revocation of supervised release.  The defendant shall warn

23   any other occupants that the premises may be subject to

24   searches pursuant to this condition.  An officer may conduct a

25   search only when reasonable suspicion exists that the defendant

1    has violated a condition of supervised release and that the

2    areas to be searched contain evidence of such a violation.  Any

3    search must be conducted at a reasonable time and in a

4    reasonable manner.  This special condition is imposed due to

5    the nature and circumstances of the offense and the defendant's

6    criminal history.  It is also ordered in order to ensure the

7    safety of the probation officers and the safety of the

8    community during the term of supervised release.

9          The defendant, of course, is ordered to pay the mandatory

10   special assessment in the amount of one hundred dollars, which

11   is due immediately.  The Court notes that if it has erred in

12   the calculation of any of the sentencing guidelines, the Court

13   would have imposed the same sentence as a variance, based upon

14   the offense conduct in the case, the characteristics of the

15   defendant, and all of the other aggravating and mitigating

16   circumstances, and as well as the statutory sentencing factors

17   under Section 3553 of Title 18 of the United States Code.

18         Pursuant to the preliminary order of forfeiture filed in

19   this matter, the defendant has forfeited all right, title and

20   interest in one American Tactical rifle, Model Mil-Sport CAL

21   5.56, Serial Number MS012823, one magazine CAL 5.56, 25 rounds

22   of ammunition, caliber 5.56.  One Springfield Armory pistol,

23   Model Hellcat, caliber 9-millimeter, Serial Number BA488003,

24   one magazine, caliber 9-millimeter, and 14 rounds of

25   9-millimeter ammunition.  This is all pursuant to Title 18 of

1    the United States Code, Section 924(d)(1) and Section 2461(c)

2    of Title 28 of the United States Code.

3         The Court is going to recommend that this defendant be

4    permitted to participate in any substance abuse treatment

5    program for which he may be deemed eligible while in the

6    custody of the Bureau of Prisons, and that he be designated to

7    an institution which is closet to his home for purposes of

8    visitation.  Anything else on behalf of the government?

9         **MS. ROSE:**  No.  Thank you, Your Honor.

10        **THE COURT:**  Mr. Weber, anything else on behalf of Mr.

11   Daniels?

12        **MR. WEBER:**  No, Your Honor.

13        **THE COURT:**  Mr. Daniels, sir, I advise you that you

14   have the right to appeal.  You have the right to appeal the

15   conviction in this case and the right to appeal the sentence of

16   the Court.  You also have the right to appeal in forma

17   pauperis, which means you have the right to a Court-appointed

18   attorney if you can't afford to hire your own attorney during

19   the appeal.

20        If nothing else, you are remanded to the custody of the

21   United States Marshals pending designation to the appropriate

22   institution.  If nothing else, we are adjourned.

23                     (HEARING CONCLUDED)

24

25

1

2                         CERTIFICATE OF COURT REPORTER

3

4        I, Teri B. Norton, RMR, FCRR, RDR, Official Court

5   Reporter for the United States District Court for the Southern

6   District of Mississippi, appointed pursuant to the provisions

7   of Title 28, United States Code, Section 753, do hereby certify

8   that the foregoing is a correct transcript of the proceedings

9   reported by me using the stenotype reporting method in

10  conjunction with computer-aided transcription, and that same is

11  a true and correct transcript to the best of my ability and

12  understanding.

13       I further certify that the transcript fees and format

14  comply with those prescribed by the Court and the Judicial

15  Conference of the United States.

16

17

18

19       s/ *Teri B. Norton*
         TERI B. NORTON, RMR, FCRR, RDR
20       OFFICIAL COURT REPORTER

21

22

23

24

25